UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RITA R. VILLA, | ) | No. EDCV 05-1093-SS |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**INTRODUCTION**

Plaintiff Rita R. Villa ("Plaintiff") filed this action on November 28, 2005, seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her applications for Social Security Disability and Supplemental Security Income benefits. Alternatively, she asks for a remand. The parties have consented to the undersigned United States Magistrate Judge Suzanne H. Segal, pursuant to 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation filed on

August 21, 2006. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## PROCEDURAL HISTORY

On May 7, 2004, Plaintiff filed an application for a period of disability, disability insurance benefits, and Supplemental Security Income benefits. (Administrative Record ("AR") 43-45). Plaintiff alleged a disability onset date of July 15, 2003 due to headaches, bone diseases and arthritis pain in her back, neck and spine. (AR 54-63).

After the Agency denied her claim initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 42). A hearing was held on June 30, 2005 before ALJ Barry S. Brown. (AR 11-15). On July 13, 2005, the ALJ issued a decision denying benefits. (AR 11-15). The Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner. (AR 4-6). Plaintiff filed a complaint in this Court on November 28, 2005, seeking review of the Commissioner's decision.

## FACTUAL BACKGROUND

Plaintiff was born on September 9, 1946 and was fifty-eight years old at the time of the hearing. (AR 46). She completed high school and has past work experience as a gas station cashier, quality control supervisor, and shipping/receiving supervisor. (AR 72).

### A. **Plaintiff's Testimony**

Plaintiff testified that she was fifty-eight years old at the hearing, and that she was disabled since July 15, 2003. (AR 159-160). However, Plaintiff testified that she worked part-time as a clerk after July 15, 2003. (AR 160). Plaintiff stated that she experienced pain in her lower back, right leg, neck, and shoulders. (AR 162). She also experiences headaches and stomach pain. (AR 162). Plaintiff further testified that she was depressed "all the time." (AR 163).

Plaintiff stated that she could walk or stand for about fifteen minutes without resting. (AR 163). She could sit for about fifteen minutes before she was uncomfortable. (AR 163). Plaintiff testified that she had a weak grip and difficulties manipulating fine or tiny objects. (AR 164). She also testified that she had trouble sleeping and could not drive long distances. (AR 165). Plaintiff claimed that she did not participate in any type of recreational activities or hobbies. (AR 165).

Plaintiff testified that she did light housework at home and sometimes needed help to dress herself. (AR 165). She claimed that she needed to lie down for about seven hours during the day time. (AR 166). Plaintiff testified that she wore braces on her right knee and left wrist for about four years. However, she obtained the braces for herself, without a doctor's prescription. (AR 166-67). She also used a cane for about two months. (AR 167). Plaintiff testified that she had physical therapy sessions for about four months in 1996, and that

she had never received treatment from a psychiatrist or a psychologist. (AR 167).

### B. **Plaintiff's Treatment Record**

Plaintiff provided medical records concerning her condition which were dated prior to her onset date. (AR 96-119). On August 9, 1996, Dr. Zan Ian Lewis examined Plaintiff and found Plaintiff's neck condition precluded Plaintiff from doing "very heavy lifting, repetitive bending, and overhead work." (AR 101-13). He recommended Plaintiff use a cervical pillow and participate in short-term therapy courses. (AR 111).

On November 17, 1995, Plaintiff visited Dr. Jack Cochran and complained about her lower back and leg pain. (AR 118). Dr. Cochran diagnosed Plaintiff with degenerative joint disease of the neck and back, lateral epicondylitis of the right elbow and myofacial pain syndrome in the neck and shoulder. (AR 119). He further noted that Plaintiff's job at the time probably either precipitated or aggravated Plaintiff's lateral epicondylitis and myofacial pain syndrome. (AR 119). Dr. Cochran prescribed Flexeril and recommended the use of cervical pillow and a tennis elbow brace. (AR 119).

On March 18, 1996, Plaintiff complained about tenderness over her neck and lower spine, and heel pain. (AR 117). Dr. Cochran advised her to follow up with her workers' compensation doctor for a possible MRI and use thick heel pads. (AR 117). On July 11, 2001, Plaintiff returned and complained about her headaches. (AR 116). Dr. Cochran

diagnosed migraines and prescribed Demerol, Vistaril, and Vicodin. (AR 116). On May 15, 2002, Dr. Cochran reported that Plaintiff was crying and depressed due to her mother's death and other family related issues. (AR 116). He prescribed Xanax and refilled Vicodin for Plaintiff. (AR 116).

**C.   Consultative Exam**

On September 27, 2004, Plaintiff underwent an orthopaedic evaluation by Dr. Jeff Altman. (AR 120-123). Plaintiff's chief complaints were pain in her lower back as well as her left and right arms. (AR 120). Dr. Altman found Plaintiff was in no "acute or chronic distress." (AR 121).

Dr. Altman diagnosed Plaintiff with degenerative changes in her cervical and lumbar spine, along with clinical evidence of lateral epicondylitis[1] as well as trochanteric bursitis.[2] (AR 122). He noted that "[Plaintiff] had some decreased range of motion; however, this was secondary to [Plaintiff's] effort." (AR 122). Dr. Altman further opined that Plaintiff "is able to do pushing, pulling, lifting, and carrying 50 pounds occasionally and 25 pounds frequently. Walking and

---

[1]   "Lateral epicondylitis" is a soreness or pain on the outer (lateral) part of the elbow. Http://www.webmd.hw/arthritis/hw225375.asp, "What is [lateral epicondylitis]?" (December 11, 2006).

[2]   "Trochanteric bursitis" is bursitis (bursae are fluid-filled sacs cushioning the hip joint; bursitis is inflammation of the bursae) of the hip. Http://www.webmd.hw/arthritis/tq1499.asp, "Hip Problems and Injuries, etc." (December 11, 2006).

standing can be done for six hours in an [eight] hour day with normal breaks." (AR 122).

### D. State Agency Physician's Evaluation

On October 18, 2004, a State Agency physician completed a Physical Residual Functional Capacity Assessment (the "PRFCA"). (AR 126-33). On the PRFCA, the State Agency physician indicated that Plaintiff could lift, carry, and pull fifty pounds occasionally, and 25 pounds frequently. (AR 127). Plaintiff could sit, stand, and walk for six hours in an eight hour day, and she could occasionally climb. (AR 127). The PRFCA showed that Plaintiff did not have any visual, manipulative, communicative, and environmental limitations. (AR 128-30). The State Agency physician found that the alleged severity of Plaintiff's condition was not fully supported by the medical evidence. In addition, he found that Plaintiff was capable of doing light housework and shopping. (AR 133).

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[3] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42

---

[3] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b) - 404.1520(f)(1) & 416.920(b) - 416.920(f)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett). If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity,[4] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

\\
\\

---

[4] Residual functional capacity is what "[one] can still do despite [his] limitations" and represents an assessment "based upon all the relevant evidence in [one's] case record." 20 C.F.R. §§ 404.1545(a), 416.945(a).

**THE ALJ'S DECISION**

At first step of the sequential evaluation process, the ALJ observed that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 14). Next, the ALJ found Plaintiff's mild back and neck degeneration are considered "severe" within the meaning of the Regulations. 20 C.F.R. § 416.920(b). (AR 14). However, these impairments did not meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. (AR 14).

The ALJ found that Plaintiff had the physical residual functional capacity ("RFC") for the full range of light work. (AR 14). Plaintiff's medically determinable mild back and neck degeneration did not prevent her from performing her past relevant work. (AR 14). The ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision. (AR 14).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**DISCUSSION**

Plaintiff contends that the ALJ erred for three reasons. First, she claims that the ALJ failed to properly consider Plaintiff's credibility. Second, she contends that the ALJ did not properly consider Plaintiff's subjective complaints of pain. Finally, she claims that the ALJ failed to consider the impact of Plaintiff's medication, dosage and side effects on her ability to work. As Plaintiff's first and second contentions, regarding her credibility and subjective pain contentions, are related issues, the Court will address these contentions together, below. The Court disagrees with all of Plaintiff's contentions.

**A. The ALJ Provided Clear and Convincing Reasons For Rejecting Plaintiff's Credibility And Her Subjective Pain Testimony**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for finding Plaintiff lacking in credibility. Furthermore, Plaintiff contends that the ALJ improperly evaluated her subjective pain testimony. (Jt. Stip. at 2-6). These arguments lack merit.

In the Ninth Circuit, "once a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity the pain." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (citing Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001)). To reject a plaintiff's subjective complaints, an ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)(quoting Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990)). "The ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaint." Lester, 81 F.3d at 834.

If the ALJ finds the claimant's pain testimony not to be credible, the ALJ "must specifically make findings that support this conclusion," and the findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on

11

permissible grounds and did not arbitrarily discredit the claimant's testimony." Rollins, 261 F.3d at 856-57 (citations omitted).  If there is no affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the symptoms.  Id.

Social Security Ruling 96-7p entitled "Evaluation of Symptoms In Disability Claims: Assessing The Credibility Of An Individual's Statements," sets forth criteria for the ALJ to consider when evaluating credibility.  (SSR 96-7p).  That ruling states:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statement about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.  (SSR 96-7p).

An ALJ may consider various factors in assessing the credibility of the subjective symptoms. 20 C.F.R. §§ 404.1529, 416.929.  Such factors include "the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g.,

movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side-effects of any medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities." Bunnell v. Sullivan, 947 F.2d 341, 346-347 (9th Cir. 1991) (citing SSR 88-13). Another relevant factor may be "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Fair, 885 F.2d at 603 (9th Cir. 1989). An ALJ may also use "ordinary techniques of credibility evaluation" to test claimant's credibility. Id. at 604 n.5. In addition, while subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the applicant's pain and its disabling effects. Rollins, 261 F.3d at 856 (citing 20 C.F.R. § 404.1529(c)(2)).

Here, Plaintiff's arguments oversimplify the ALJ's findings. Plaintiff's portion of the Joint Stipulation overlooks the specific reasons the ALJ included in his decision for rejecting Plaintiff's testimony. Although the ALJ mentioned the objective medical evidence as one reason for rejecting her subjective complaints, he used it only as one of many very clear reasons. The ALJ found as follows:

> The claimant presented no other significant objective medical evidence of a medically determinable impairment or impairment related limitations. Nonetheless, the claimant maintains she is unable to work due to her alleged subjective symptoms. However, the undersigned notes the claimant has not

established a medically determinable impairment which would reasonably be expected to produce such limitation. Indeed, her only relevant physical exam of record was positive for poor effort and a lack of true objective findings. The claimant is not described as a surgical candidate, nor is there any evidence she has required extended periods of hospital confinement, emergency room treatment, use of a TENS unit, participation in a pain control clinic, or other extensive or significant forms of treatment commonly prescribed for intense pain. The claimant has no abnormality of gait, nor are any assistive devices required. While the claimant asserted a chronic and debilitating pain syndrome of extended duration, it is noted she exhibited no evidence of diffuse atrophy or muscle wasting, common indicators of chronic pain. Moreover, the claimant has been able to work continuously since her alleged onset date. While her recent work may have been below the substantial gainful activity level, it is still indicative of her ability to work. At the hearing, the claimant's thoughts did not seem to wander and all questions were answered alertly and appropriately. There is no credible evidence of regular usage of strong medication to alleviate pain that would significantly impair the claimant's ability to do basic work activities. There was no evidence in the medical record of any significant side effects. Accordingly, the undersigned concludes the claimant's testimony and evidence, although appearing sincere, is not fully credible regarding the extent, intensity and

duration of the alleged subjective symptoms and functional limitations and restrictions." (AR 13).

In rejecting Plaintiff's testimony, the ALJ first observed that there was a lack of objective medical evidence to support the degree of alleged pain or limitation. As noted above, the lack of objective evidence is a legitimate reason to reject testimony if it is not the sole reason. Rollins, 261 F.3d at 856 (citing 20 C.F.R. § 404.1529(c)(2)). Dr. Altman, who conducted an orthopedic evaluation of Plaintiff, noted that "[Plaintiff] had some decreased range of motion; however, this was secondary to [Plaintiff's] effort." (AR 122). Dr. Altman's findings of mild limitations, based upon his objective tests of Plaintiff, do not support the degree of limitation expressed in Plaintiff's testimony. The treating physician's records, which were sparse and limited, also do not support Plaintiff's testimony. (See AR 101-116). Thus, the ALJ correctly concluded that the medical evidence did not support the degree of limitation or pain alleged by Plaintiff.

Second, the ALJ's observations that Plaintiff was not "a surgical candidate" and did not require "extensive . . . treatments commonly prescribed for intense pain" were also legitimate reasons to reject her testimony. (AR 13). Dr. Cochran, Plaintiff's treating physician, never described Plaintiff as a surgical candidate. In addition, Plaintiff received only conservative treatment for pain. Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (per curiam) ("'conservative treatment' . . . [suggests] a lower level of both pain and functional limitation."); Bunnell, 947 F.2d at 346 ("unexplained, or inadequately

explained, failure to seek treatment or follow a prescribed course of treatment" is a relevant factor in assessing credibility of pain testimony).

Third, the ALJ noted that Plaintiff had a normal gait at the hearing, and that Plaintiff did not require any assistive devices. An ALJ's observations during the hearing, along with other evidence, constitutes substantial evidence. Drouin v. Sullivan, 966 F.2d 1255, 1258-59 (9th Cir. 1992). Plaintiff testified that she wore braces on her right knee and left wrist and that she used a cane. Plaintiff, however, also testified that the braces and canes were not prescribed by doctors. (AR 166-67). Fourth, although Plaintiff asserted that she had been disabled and suffered chronic pain since her alleged onset date, Plaintiff "exhibited no evidence of diffused atrophy or muscle wasting, common indicator of chronic pain." (AR 13). Again, these were legitimate reasons to reject Plaintiff's testimony. Meanel v. Apfel, 172 F.3d 111, 1115 (9th Cir. 1999)(recognizing that the lack of muscle atrophy is inconsistent with plaintiff's allegations of incapacitating disability).

The ALJ also recognized that Plaintiff has been working since her alleged onset date. (AR 13). While Plaintiff's recent work was below the substantial gainful activity level, it is still "some evidence" of her ability to work. 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). Finally, the ALJ found there was no evidence of regular usage of strong medication for pain or any significant side effects. Again, this was a legitimate reason to reject Plaintiff's testimony.

Plaintiff grossly misstates the ALJ's decision by quoting only a limited portion of one sentence in support of her argument that the ALJ did not follow SSR 96-07p. At page 9 of the Joint Stipulation, Plaintiff argues:

> Nevertheless, despite the medical evidence, the ALJ stated: ". . .the undersigned notes the claimant has not established a medically determinable impairment. . ." [AR 13].

(Jt. Stip. at 9-10). Plaintiff uses this portion of the decision to support an argument that the ALJ allegedly found no medical determinable impairment. This is, however, <u>not</u> what the ALJ found. When read in the context of the entire sentence, it is clear that the ALJ did not make the finding that Plaintiff suggests, but instead made the following observation:

> The claimant presented no other significant objective medical evidence of a medically determinable impairment or impairment related limitations.

[AR 13]. Plaintiff's distortion of the ALJ's decision does not support her argument, which has no true factual basis. In his decision, the ALJ <u>clearly</u> found that Plaintiff suffered from the severe, medically determinable impairments of back and neck degeneration. (AR 14). However, he disagreed with the degree of limitation or pain Plaintiff claimed to suffer, based upon the factors described above.

The ALJ cited and discussed the probative evidence with respect to Plaintiff's subjective pain testimony and provided clear and convincing reasons for rejecting Plaintiff's credibility. Thus, contrary to Plaintiff's assertion, the ALJ properly rejected Plaintiff's subjective pain testimony and no error occurred.

**B. The Medical Evidence Did Not Demonstrate That Plaintiff Regularly Used Strong Medication or Suffered Significant Side Effects**

Plaintiff contends that the ALJ failed to consider Plaintiff's medication, dosages, and side effects. (Jt. Stip. 14). Plaintiff testified that she had taken Vicodin, Excedrin, and Prednisone. (Jt. Stip. 14). Specifically, Plaintiff testified that Prednisone was "making [her] sick." (AR 164).

The ALJ found there was "no credible evidence of regular usage of strong medication to alleviate pain that would significantly impair [Plaintiff's] ability to do basic work activities." (AR 13). Although Plaintiff claimed to be taking Vicodin for years, she does not point to any evidence in the record that she either consistently took Vicodin or that she suffered serious side effects that impaired her ability to do work activities. In one record, it states that Plaintiff had a history of taking Vicodin, but it also states that she was given a prescription for Darvocet,[5] which she did not fill. (AR 138). Prior to the onset

---

[5] Darvocet is a prescription narcotic painkiller which includes propoxyphene with acetaminophen.

date, there were only two Vicodin prescriptions in the record, one in July 2001 and another in May 2002. (AR 116). In Dr. Altman's report dated October 14, 2004, he indicates that her current medications include Vicodin, although this appears to be based upon Plaintiff's reporting, as it does not appear in his discussion of Plaintiff's medical records. (AR 120-122). There is no indication in the report, however, that Plaintiff suffers from any side effects due to this medication. (Id.)

Moreover, Plaintiff's earning records indicated that Plaintiff worked in years 2001, 2002, and 2003, earning respectively $18,994.99, $18,244.50, and $11,423.52. (AR 48). Plaintiff's earning records for 2001, 2002, and 2003 clearly suggest that either Plaintiff was not taking Vicodin regularly or Plaintiff was able to work while taking Vicodin. In either case, the record is, at best, inconsistent about Plaintiff's use of Vicodin. More importantly, there is no demonstration that any medication impaired her ability to do basic work activities.

The ALJ found that there was no evidence of any significant side effects. (AR 13). Plaintiff claimed that Prednisone "made her sick" and caused her to put on weight. (AR 164). Her medical record demonstrated that her weight fluctuated between 148 pounds to 153.8 pounds from 1996 to 2005. (AR 105, 121, and 137). This limited weight fluctuation of approximately five pounds does not demonstrate a significant side effect. Thus, the ALJ did not err in finding that there was an absence of objective medical evidence demonstrating that

Plaintiff regularly used strong medication or suffered significant side effects.

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on counsel for both parties.

DATED: December 12, 2006.

_____/ S /_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE